Cabell, J.
As to the merits of this case, I have nothing to say, but to express my entire concurrence in the opinion delivered by judge Parker.
But as reference has been made to the case of Koger et al. v. Kane’s adm'r &c. 5 Leigh 606. I deem it my duty to avail myself of the occasion, to correct a mistake into which mr. Leigh was led, in the report of that case. It is there stated, that the other judges concurred in the opinion delivered by the president. The fact was somewhat different. The court which decided that case consisted of only three judges; the president, judge Carr, and myself. There was no difference of opinion between the president and judge Carr. But I differed from them both, as to one point. I did not think that Kane, who had purchased from Koger, had agreed to “ take the title of Preston ff and therefore I was of opinion that he still retained his right to injoin the purchase money due from him to Koger. On all other points I agreed with the rest of the judges. My opinion was reduced to writing and delivered in court, and I intended to hand it to the reporter. This, however, 1 omitted to do; and mr. Leigh, finding but one opinion in the record which was given to him, naturally inferred, and therefore stated, that the other judges had concurred. My opinion in that case will now be handed to mr. Leigh, with a request that it may be published as a note to this case.*
Tucker, P.
The decree in this case is, I think, plainly erroneous, in decreeing costs de bonis propriis against the executor, and in failing to require a new and sufficient deed to be executed by Coffman. The deed from Coffman to Long is void for uncertainty, as also is that from Hull to Coffman, for there is no other description of the land sold than a setting forth of the *568 boundaries, which not only do not cover the land sold, but do not meet. A tract of land may be well described without setting out the bounds: or it may be ...... • 1 , , . , J well described by setting out the bounds, without any tb¡ng more . but in this latter case, the boundaries set out ought to shew forth the land, so .that it can be identified. The error in this case was anteriour to Coffman's deed; but it may not perhaps be necessary to correct the deed to him, as well as that from him. It will suffice if Coffman makes a deed according to Hall's survey, as laid down on the plat.
I am also of opinion that the sale should have been set aside, on the authority of Gay v. Hancock &c. 1 Rand. 72. for no sale could have been fairly made where the title was so radically defective. But I see no foundation for the charge of usury, nor any error in refusing to make an allowance for the supposed interference with Robinson of 27f acres. As to the supple- ■ mental bill, it was obviously not necessary to settle the question whether Israel was entitled to his money. Had the deed been regular, the supposed superiour title of the commonwealth would have been nothing to him, for he did not make himself in any way responsible for the title. He is only bound to procure Coffman's deed with general warranty. When he does this, he is entitled to his money. Then, as to Coffman. If Long had purchased from Coffman, he might well say, “As the contract is still executory, I will not go on with it; equity will not compel me to take a bad titleand in this way, the facts set forth in the supplemental bill would be important. But Long did not purchase of Coffman. He dealt with Israel, and Israel purchased of Coffman, and has paid his money for the land. The contract, then, cannot be rescinded by Long, and his only redress is upon his general warranty. This redress he cannot assert in a court of equity, nor in anticipation of an eviction which has not occurred, and may *569 never occur. He cannot assert it in equity, because A that court is not the proper tribunal to give damages for breach of a warranty; nor can he assert it in anti- „ . cipation of an eviction, on the ground that the title is defective, for that would be to convert a covenant of warranty into a covenant for good title, whereas they are essentially and intrinsically distinct. The vendor of land, who has some doubts about his title, but has had a long possession which a short time may mature into a perfect title, may be very willing to give a warranty, but very unwilling to covenant for good title, since that covenant subjects him to an immediate action if there be a single defect in the chain of title. It is on these principles that in England relief has been denied in equity by way of injunction, where the vendee has obtained his deed and possession. They are, I doubt not, the true principles of a court of equity. We have indeed gone farther in Virginia, in relieving by injunction ; but wc have never gone so far as to interfere except where the application was to restrain the recovery of the purchase money. That is not the case here. As to Coffman, this bill (except so far as it seeks a correction of the description in the deed) is purely an action upon the covenant of warranty, brought before eviction, and when probably no eviction may ever occur. Upon the whole, therefore, the supplemental bill was properly disregarded.
For the errors already mentioned, the decree is to be reversed, and the cause remanded for further proceedings.

 Sec the opinion in a note at the end of this case.
*569 The opinion delivered by Cabell, J. in the case of Koger et al. v. Kane's adm'r &c. 5 Leigh 606. (see his remarks, ante, p. 567.) was in the following terms:
I am of opinion, on general principles, that the purchaser of land is entitled to injoin the purchase money, for any deficiency in the quantity of the land, whether that deficiency arises from the fact that the boundaries in the deed do not contain the stipu *570 lated quantity, or from the fact that a portion of the land contained within the boundaries of the deed is embraced by the superiour title of others. I do not understand this position to be contradicted by the opinion of the other judges.
But I do understand the majority of the court to be of opinion, “ that in this case, Kane will not be entitled to any redress against Roger, and consequently not against his assignee Sailing, provided the deficiency in the quantity of land proceeds from defect of title to lands embraced by the calls of the deed. I understand this opinion to be founded on the particular nature of the title bond executed by Roger to Kane, in which Roger binds himself “ to make or cause to be made to tlie said Kane and his heirs, a good and sufficient deed in fee simple with general warranty,” &c. It is admitted, as I understand the opinion, that if Roger had only bound himself and his heirs to make the deed in fee simple with general warranty, Kane would be entitled, notwithstanding he had received the deed, to injoin the purchase money. But it is contended that Roger, having contracted for the privilege of causing the deed to be made by others, has discharged himself from all obligation, both at .law and in equity, by his causing the deed to be made by Preston. I cannot perceive the force of this distinction. If the acceptance .of the deed from Roger himself would not discharge Roger, I cannot see how the acceptance of a deed made by another, at his request, should discharge him. I am decidedly of opinion that he is not discharged in either case. Although the execution of the deed, if conformable to the bond, be a discharge of the legal obligation, yet equity looks beyond the letter of the bond. It looks to the substance of the contract, which is, that a good and sufficient title in fee simple shall be made to the land contracted for; and when it sees that this has not been done, it will injoin the purchase money, the party not having got its consideration.
But this is not all. The deed executed by Preston, so far from complying with the spirit of the bond, is not a compliance even with its letter. The bond recites that Roger had sold to Kane “ all that tract or parcel of land lying in Scott, being known by the name of the Flat Lick, containing four hundred and sixty-four acres;” and then goes on to declare that “ if the said Roger shall make or cause to be made unto the said Patrick Kane, and to his heirs, a good and sufficient deed in fee simple, with general warranty, for the said four hundred and sixty-four acres,” then the obligation to be void. Now, this is a positive stipulation that the land contracted for contained 464 acres; and it bound Roger to convey or cause to be conveyed 464 acres, with general warranty. But the deed mqde by Preston did not even profess to convey 464 *571 acres. It professes to convey and to warrant only the land con-tamed within the boundaries mentioned in the deed, whether the quantity be more or less than the 464 acres. How then can the execution of this deed, if the quantity of land conveyed and warranted be less than 464 acres, be a compliance with a bond which . . calls for a deed conveying and warranting 464 acres? I am clearly of opinion that it does not take away Kane’s right to redress against Roger.
I concur in the other parts of the decree prepared by the president.